UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| LOUIS F. PINTO, II, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 6-12-21 |
| § | |
| CHIN SUN PINTO, § | |
| § | |
| Defendant. § | |

## **MEMORANDUM AND ORDER**

Plaintiff Louis F. Pinto II, a retired U.S. Air Force Captain, brings this action seeking damages for overpaid alimony, arrears, and related payments made to his ex-wife, Defendant Chin Sun Pinto. Captain Pinto's claims stem from California and Texas state courts' allegedly improper interpretation and enforcement of the Pintos' 1999 Divorce Decree. Among other things, Captain Pinto alleges that a Texas court failed to enforce a provision of the Decree that cut off alimony obligations when Ms. Pinto started receiving Social Security benefits, and that a California court ordered the Captain to pay arrears that he had already paid.

Although Captain Pinto names his ex-wife as the defendant, his alleged injuries, in fact, arise from the state court orders, which he seeks to be judged as void. As such, this action is tantamount to an appeal of the state court rulings. Pursuant to federal statute and the well-established *Rooker-Feldman* doctrine, this Court, as a court of original jurisdiction, does not have subject-matter jurisdiction

to hear Captain Pinto's claims.  Accordingly, Ms. Pinto's Motion to Dismiss is **GRANTED**.[1]

## I. BACKGROUND

On June 8, 1999, the Texas district court of Denton County entered a divorce decree for Captain and Ms. Pinto, finding that "their marriage had become insupportable because of discord or conflict of personalities which destroyed the legitimate ends of the marriage without any reasonable expectation of reconciliation."  Docket Entry No. 1-1 at 2.  The court found Ms. Chin to be more at fault in causing the dissolution of the marriage, but, because the marriage lasted at least ten years, it ordered Captain Pinto to pay $720.00 per month in spousal maintenance until either party died, Ms. Chin remarried, or Ms. Chin started receiving Social Security benefits.  *Id.* at 2, 6–7.  The Decree also required that Captain Pinto provide spousal support for the three years following the marriage and divided the parties' debts and property.  *Id.* at 3–7.

The same discord that plagued the Pintos' marriage has plagued their divorce.  Ms. Pinto purportedly filed contempt actions for unpaid support in her

---

[1] The Court notes that—perhaps due to Ms. Chin's status as a *pro se* litigant—the Motion to Dismiss does not cite any case law or reference the *Rooker-Feldman* doctrine, which is at the heart of this Court's opinion.  *See* Docket Entry No. 5.  The Court believes the Motion raises the issue, however, by stating that the action "has already been decided in State Courts that have original jurisdiction over the dissolution action."  *Id.* at 2.  Regardless, *Rooker-Feldman* is a jurisdictional doctrine, and "federal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte."  *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

current residence of California in 2002, 2006, 2007, and 2011, the latest resulting in a bench warrant for Captain Pinto's arrest. Docket Entry No. 5 at 1–2. Captain Pinto insists that his ex-wife has been a "legal bully," engaging in "shameful cheating of the legal system" with "persistent efforts to deprive [him] of his rightful benefits in their decree [and] his bullet-dodging, hard earned military retirement pay." Docket Entry No. 1 at 5, 8.

From Captain Pinto's Complaint and supplemental Brief Supporting Federal Jurisdiction, it appears that he takes issue with the following state court rulings:

- A 2007 *ex parte* garnishment that Ms. Pinto obtained in California, allegedly without disclosing her receipt (or upcoming receipt) of Social Security disability benefits (Docket Entry No. 1 at 4);

- A 2010 Texas court order, which acknowledged that Ms. Pinto was receiving temporary Social Security disability benefits and deducted that amount from Captain Pinto's alimony obligation, but required Captain Pinto to continue paying spousal maintenance until such time either party died, Ms. Pinto remarried, or Ms. Pinto reached Social Security full retirement age. Captain Pinto argues that the Texas court misinterpreted "Social Security benefits" in the Decree to exclude disability benefits (*id.* at 7; Docket Entry No. 1-4);

- A 2011 California bench warrant for his arrest arising from disputed payment obligations (Docket Entry Nos. 1 at 3, 7; 1-6); and

- A 2012 California order for arrears and attorney fees, which Captain Pinto contends were based on payments already received and resulted from Ms. Pinto's misleading the California court (*id.*; Docket Entry No. 13 at 3–5).

## II. DISCUSSION

The issue in this case is not whether the Texas and California courts ruled correctly, but whether this Court has jurisdiction to hear claims challenging those courts' rulings.

Under a principle known as the *Rooker-Feldman* doctrine, "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (citations and internal punctuation omitted); *see generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In other words, "*Rooker–Feldman* prevents state-court litigants 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Hall v. Dixon*, No. H-09-2611, 2010 WL 3909515, at *37 (S.D. Tex. Sept. 30, 2010) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). The doctrine recognizes that while Congress granted federal district courts original jurisdiction to hear certain types of cases—such as those involving federal questions under 28 U.S.C. § 1331 or those involving citizens of different states under 28 U.S.C. § 1332—Congress reserved federal appellate jurisdiction over

state court judgments to the Supreme Court under 28 U.S.C. § 1257(a).  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005).[2]

Stripped to its core, Captain Pinto's claim is a collateral attack on the California and Texas courts' decisions.  The overpayments that he seeks as damages derive from the California orders—which require him to pay arrears allegedly already paid—and the Texas order—which allegedly misapplies the Decree's provision regarding "Social Security benefits."  *See Hall*, 2010 WL 3909515, at *38 (noting that the *Rooker-Feldman* doctrine "applies if the injury's source is the state-court decision").  Federal courts, including those within this Circuit, have applied *Rooker-Feldman* in similar circumstances when litigants challenged state court rulings involving divorce decrees.  *See, e.g.*, *Koshel v. Koshel*, No. 3:01-CV-2006-M, 2002 WL 1544681, at *3 (N.D. Tex. July 11, 2002) (holding that *Rooker-Feldman* precluded action from proceeding where "Plaintiff challenge[d] the constitutionality of his divorce decree [but did] not attack the constitutionality of Maryland's divorce statutes"); *Nagy v. George*, No. 3:07-CV-368-K, 2007 WL 2122175, at *5 (N.D. Tex. July 23, 2007) (invoking *Rooker-Feldman* where plaintiff sought reversal of divorce decree through guise of a civil rights action); *see also Bell v. Valdez*, 207 F.3d 657, 657 (5th Cir. 2000)

---

[2] As noted by the Supreme Court in *Exxon*, "Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal habeas review of state prisoners' petitions." *Id.* at 292 n.8 (citing 28 U.S.C. § 2254(a)).

(unpublished) ("The *Rooker-Feldman* doctrine has frequently been used to dismiss civil rights complaints that, like [Plaintiff's], are in essence challenges to state court divorce decrees.").

Captain Pinto's argument that no court has issued a ruling on the legal definition of "Social Security benefits" or on whether the Decree is ambiguous is belied by the Texas court's June 23, 2010 order, which directly confronts the issue of Ms. Pinto receiving temporary disability benefits from the Social Security Administration. *See* Docket Entry No. 1-4. In fact, the Texas court issued that order after hearing from the parties' counsel and reviewing Captain Pinto's brief on the subject. *See id.* (discussing Captain Pinto's First Amended Petition to Modify or Terminate Spousal Support, for Clarification of Spousal Maintenance Order and for Confirmation of Arrearages or Overpayment of Spousal Maintenance).

Captain Pinto also argues that the state orders are void *ab initio* and, as such, the Full Faith and Credit Clause prohibits their enforcement. If true, this argument would directly implicate the *Rooker-Feldman* analysis, because a federal court need not "give greater deference to a state court judgment than a court of the state in which the judgment was rendered would give it." *Gauthier v. Cont'l Diving Servs., Inc.*, 831 F.2d 559, 561 (5th Cir. 1987) (citing 28 U.S.C. § 1738)). In support of the argument that the orders are void, Captain Pinto cites section 9.007

of the Texas Family Code, which states that an order "that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable." Tex. Fam. Code Ann. § 9.007(b).  He also cites a Houston court of appeals decision, in which the court applied section 9.007 in holding a qualified domestic relations order void that impermissibly altered a divorce decree's unambiguous property division.  *Gainous v. Gainous*, 219 S.W.3d 97, 106–111 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Despite these arguments, this Court does not find the state court orders to be void.  First, Captain Pinto provides no compelling argument why the arrears orders unrelated to the "Social Security benefits" provision should be considered void.  He argues that the California court issued orders for arrears that he had already paid and that the court based its rulings on misinformation, but, even if true, those arguments do not suggest that the court acted beyond its jurisdiction.  "If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court." *Liedtke*, 18 F.3d at 317.

Second, Section 9.007 of the Texas Family Code governs a court's ability to modify the *division of property* in a divorce decree; it does not govern a court's ability to issue orders regarding *maintenance*.  *Compare* Tex. Fam. Code Ann. § 9.007(b), *with id.* § 8.057(c) (permitting court to modify the "portion of a decree

providing for maintenance on a proper showing of a material and substantial change in circumstances"). Captain Pinto's complaints regarding the state courts' enforcement of the "Social Security benefits" provision of the Decree relate only to maintenance and not division of property. *See* Docket Entry No. 1-1 (Decree containing different sections for "Property Division" and "Maintenance"). Because the state courts did not modify the property division ordered by the decree, their rulings were not beyond their jurisdiction.[3]

Finally, even if the order relating to the "Social Security benefits" provision could conceivably be considered void and the *Rooker-Feldman* doctrine did not apply to this Court's consideration of maintenance payments after Ms. Pinto received disability benefits, this Court would not have jurisdiction to hear those claims for a separate reason. Under 28 U.S.C. § 1332, this Court has subject-matter jurisdiction to hear civil actions between citizens of different states only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. The amount in controversy relating to

---

[3] The Court also notes that, even with regard to the division of property, the Texas Family Code permits courts to clarify prior orders. *See* Tex. Fam. Code Ann. § 9.008(a) ("On the request of a party or on the court's own motion, the court may render a clarifying order before a motion for contempt is made or heard, in conjunction with a motion for contempt or on denial of a motion for contempt."); *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) ("The Family Code provides that trial courts may enter orders of enforcement and clarification to enforce or specify more precisely a decree's property division.") (citing Tex. Fam. Code Ann. § 9.006(a)). The June 23, 2010 Texas court order, had it dealt with property division, would be more properly construed as a clarification order than a modification order, and thus within that court's jurisdiction. *See* Docket Entry No. 1-4 at 2 ("The Court finds that the prior order should be clarified as ordered below . . . .").

maintenance payments made after Ms. Pinto received her disability benefits is $47,255.00,[4] which does not meet the required threshold for jurisdiction.

In sum, given that the state court rulings—whether wrong or right—are not void, the *Rooker-Feldman* doctrine divests this Court of jurisdiction to second-guess them.  Captain Pinto may not appeal to a federal district court to undo state court rulings in his ex-wife's favor.

### III.  CONCLUSION

For the reasons stated above, this Court does not have subject-matter jurisdiction to hear Captain Pinto's claims.  Accordingly, Defendant Chin Pinto's Motion to Dismiss (Docket Entry No. 5) is **GRANTED**.  Plaintiff Louis F. Pinto II's claims are **DISMISSED** with prejudice.

SIGNED this 31st day of October, 2012.

_____
Gregg Costa
United States District Judge

---

[4] According to Captain Pinto, Ms. Pinto began receiving Social Security disability benefits in November 2006.  The original maintenance obligation was $720.00 per month and remained at that level until the Texas court ordered it be adjusted to $445.00 per month starting in July 2010 with an end date of May 2013.  Therefore, the amount in controversy would be $720.00 per month for 44 months (November 2006 through June 2010) plus $445.00 per month for 35 months (July 2010 through May 2013) for a total of $47,255.00.